**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **JASON BLAHNIK,** | ) | |
| | ) | **Civil No. 08-C-497** |
| **On behalf of himself and all others** | ) | |
| **similarly situated,** | ) | **Hon. Joan B. Gottschall** |
| | ) | |
| **Plaintiff.** | ) | **Magistrate Judge Denlow** |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **LIFE TIME FITNESS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**LIFE TIME'S MEMORANDUM IN SUPPORT**
**OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS**

**INTRODUCTION**

Under the Fair and Accurate Credit Transactions Act ("FACTA"), businesses cannot

electronically print an "expiration date upon any *receipt* provided to the cardholder at the point

of the sale or transaction," and they also cannot print any more than the last five digits of the

account number. 15 U.S.C. § 1681c(g)(1) (emphasis added). To create an alleged FACTA

claim, Plaintiff Jason Blahnik briefly became a member of Life Time Fitness. He signed Life

Time's Membership Agreement authorizing the automatic payment of his future membership

fees and received a copy of the Agreement. Then he used his credit card to pay his enrollment

fee and first monthly dues payment. He received from Life Time an electronically printed

receipt from its point-of-sale terminal acknowledging his payment. Within 30 days, he canceled

his membership and received a full refund. Then he filed this FACTA lawsuit. This lawsuit

*does not challenge the receipt Blahnik received, because Blahnik concedes that it complied with*

*FACTA*.  Instead, this lawsuit challenges Blahnik's Membership Agreement with Life Time

because it contained the expiration date for his credit card.  The pure question of law presented

by this motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is whether Blahnik's

Membership Agreement with Life Time is a "receipt provided to the cardholder at the point of

the sale or transaction."  15 U.S.C. § 1681c(g)(1).

## STATUTES INVOLVED

The relevant portion of the Fair and Accurate Credit Transactions Act, 15 U.S.C.

§ 1681c(g), is just three paragraphs long.  We reprint it here in its entirety:

(g) Truncation of credit card and debit card numbers

(1) In general.

Except as otherwise provided in this subsection, no person that accepts credit cards or debit cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of the sale or transaction.

(2) Limitation.

This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

(3) Effective date.

This subsection shall become effective—

(A) 3 years after the date of enactment of this subsection [enacted December 4, 2003], with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and

(B) 1 year after the date of enactment of this subsection [enacted December 4, 2003], with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is first put into use on or after January 1, 2005.

## FACTS AND PROCEDURAL HISTORY

As it must, Life Time takes all well-pleaded allegations in the Complaint as true for

purposes of this motion for judgment on the pleadings. *N. Ind. Gun & Outdoor Shows, Inc. v.*

*City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998).

On November 29, 2007, Blahnik visited the Life Time Fitness Club in Burr Ridge to

become a member. (Complaint ¶ 8.) Blahnik reviewed and signed a copy of Life Time's

General Terms Agreement (hereinafter "Membership Agreement"). Life Time then printed a

signed copy of the Membership Agreement on standard 8½ x 11 paper and gave it to Blahnik.

(Complaint Ex. A.) The Membership Agreement, together with a Member Usage Agreement

that Blahnik also signed (Answer Ex. 2), form the contract between Blahnik and Life Time.

As a condition of membership, Life Time required Blahnik to (1) pay an enrollment fee

and the first month's membership dues and (2) establish a method for automatically paying his

future monthly membership fees. The Membership Agreement shows the fees that Blahnik was

required to pay: an enrollment fee of $149.50 and prorated first month's dues of $5.33, for a

total of $154.83. (Complaint Ex. A.) The Membership Agreement does not show whether

Blahnik actually paid those fees.

In fact, Blahnik did pay the required fees after he signed the Membership Agreement. He

used his credit card for that transaction, and he received a FACTA-compliant receipt from Life

Time for it. (Complaint ¶ 8) Blahnik does not challenge the receipt he received, because it did

not print any more than the last five digits of Blahnik's credit card number, and it did not print

the card's expiration date. *Ibid.* For the Court's reference, Life Time has attached its

Merchant's Copy of Blahnik's receipt as Exhibit 1 to its Answer. The customer copy is

materially identical in form to the Merchant's Copy, except that the customer copy prints only

the last four digits of the credit card number and does not print the card's expiration date.

Blahnik himself has the only copy of the customer receipt.

Regarding future charges, the Membership Agreement contains Blahnik's written

authorization for Life Time to automatically collect his future membership fees through an

electronic means of payment.  Under the heading "**MEMBERSHIP FEES PAYMENT AND**

**REFUND AUTHORIZATION**," the Membership Agreement states:

> I authorize Life Time Fitness . . . to, depending on my method chosen,
> automatically and without notice charge my designated credit/debit card or draft
> from my designated checking/savings account . . . for any and all amounts due and
> owing to Life Time Fitness.

(Complaint Ex. A.)  A box at the top of the Membership Agreement summarizes the "**Payment**

**Method for Membership Fees**" that the Blahnik chose.  The information in the box shows that

Blahnik's **Account Type** was MasterCard, that the **Name on Card** was Jason S Blahnik, and

that the **Account Number** was \*\*\*\*\*\*\*\*\*\*\*\*8068.  (*Ibid.*)  The box also shows the card's

**Expiration Date**.  (*Ibid.*)  The box does not reflect the terms of any sale or transaction with Life

Time.

Less than a month after he became a Life Time member, Blahnik canceled his

membership and, under the terms of the Membership Agreement, received a full refund of his

enrollment fee and first monthly dues.  (Answer ¶ 8.)

In January 2008, Blahnik filed his Complaint.  This action is one of eight FACTA actions

that Blahnik has filed in this Court within the last year, six of which have already been closed.[1]

---

[1] *Blahnik v. Subway Sandwiches & Salads*, No. 1:07cv4341 (N.D. Ill.) (filed Aug. 2, 2007; now
closed); *Blahnik v. US Bank*, No. 1:07cv4344 (N.D. Ill.) (filed Aug. 2, 2007; now closed);
*Blahnik v. Roccovino II, Inc.*, No. 1:07cv6193 (N.D. Ill.) (filed Nov. 1, 2007; now closed);
*Blahnik v. AJW Pizza, Inc.*, No. 1:07cv6973 (N.D. Ill.) (filed Dec. 12, 2007; now closed);
*Blahnik v. Quigley's Irish Pub, Inc.*, No. 1:08cv110 (N.D. Ill.) (filed Jan. 7, 2008; now closed);

(continued on next page)

Blahnik alleges that he received an "electronically printed receipt" from Life Time.  (Complaint

¶ 8.)  But the document he attaches to the Complaint is not his receipt; it is his Membership

Agreement.  (Complaint Ex. A.)  Blahnik alleges that Life Time willfully (Count I, citing 15

U.S.C. § 1681n) and negligently (Count II, citing 15 U.S.C. § 1681o) failed to comply with

FACTA by printing the expiration date of his credit card on his copy of the Membership

Agreement.  Blahnik does not allege that he suffered any actual damage from having the

expiration date printed there.

Life Time answered the Complaint on May 1, 2008 and simultaneously filed this motion

for judgment on the pleadings.

### STANDARD FOR JUDGMENT ON THE PLEADINGS

Rule 12(c) provides that "[a]fter the pleadings are closed—but early enough not to delay

trial—a party may move for judgment on the pleadings."  Fed. R. Civ. P. 12(c).  The standard for

deciding a Rule 12(c) motion is the same as the standard for deciding a motion under Rule

12(b)(6).  *Killingsworth v. HSBC Bank Nev., N.A*, 507 F.3d 614, 618 (7th Cir. 2007).  Although

this Court has previously held that a motion for judgment on the pleadings may be granted only

when it appears beyond a doubt that the plaintiff cannot prove any facts to support a claim for

relief, the Supreme Court recently declared that this standard "has earned its retirement."  *Bell*

*Atl. Corp. v. Twombly*, ___ U.S. ___, 127 S. Ct. 1955, 1969 (2007).  Now, a complaint must

contain "[f]actual allegations" that are "enough to raise a right to relief above the speculative

level on the assumption that all the allegations in the complaint are true (even if doubtful in

---

(continued from previous page)

*Blahnik v. Famiglia-Debartolo Operations, LLC*, No. 1:08cv1468 (N.D. Ill.) (filed Mar. 12,
2008; still active).

fact)." *Id.* at 1965 (citations omitted). The allegations themselves must "plausibly suggest[]" and "not merely [be] consistent with" a cause of action. *Id.* at 1966. *Twombly* was decided on appeal from a Rule 12(b)(6) motion to dismiss, but the Seventh Circuit has held that its standard also governs Rule 12(c) motions for judgment on the pleadings. *Killingsworth*, 507 F.3d at 618.

The Court may consider the exhibits attached to the Complaint and Answer—the Membership Agreement, the Member Usage Agreement, and Blahnik's receipt—without converting this motion into a motion for summary judgment, because "[a] copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c). A court may also consider exhibits submitted by the defendant "if they are referred to in the plaintiff's complaint and are central to [his] claim." *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993). Blahnik attached the Membership Agreement to his Complaint. The Member Usage Agreement is incorporated by reference into the Membership Agreement and forms part of the same contract. Blahnik's actual "receipt" is referred to in the Complaint and is central to his claim. The Court is not bound on this motion to accept Blahnik's legal characterization of the Membership Agreement attached to the Complaint. *See, e.g., Republic Steel Corp. v. Pa. Eng'g Corp.*, 785 F.2d 174, 177 n.2 (7th Cir. 1986). The Court may therefore consider each of those documents. *See, e.g., MJ & Partners Rest. Ltd. P'ship v. Zadikoff*, 10 F. Supp. 2d 922, 931 (N.D. Ill. 1998) (considering contractual documents submitted by defendant because they were referred to in the complaint and were central to the claim); Charles A. Wright and Arthur R. Miller, 5A and 5C FEDERAL PRACTICE & PROCEDURE §§ 1327, 1371 (2008).

## ARGUMENT

**I.    FACTA Does Not Apply To Blahnik's Membership Agreement, Because The Agreement Is Not A "Receipt" For A Completed "Sale Or Transaction."**

Blahnik's FACTA challenge to his Membership Agreement fails as a matter of law because the plain text of FACTA, the ordinary meaning of the term "receipt," the regulations governing electronic fund transfers, and existing case law all limit FACTA's application to "receipt[s]" that acknowledge a completed "sale or transaction."  15 U.S.C. § 1681c(g)(1). Blahnik received a "receipt" from Life Time that he does not challenge because it complied with FACTA.  (Answer Ex. 1.)  The Membership Agreement he challenges is not a "receipt," because it does not acknowledge money received in a past transaction; rather, it authorizes future transactions.  The Court should therefore grant judgment for Life Time.

The ordinary meaning of "receipt," together with the context in which that term is used in FACTA, make its meaning perfectly clear:  A FACTA "receipt" is a printed form, given *after* a sale or transaction has occurred, acknowledging the money that has been received through a debit- or credit-card payment.  This meaning comes first of all from FACTA itself.  *See e.g., Nolan v. City of Chicago*, 125 F. Supp. 2d 324 (N.D. Ill. 2000) (interpretation begins with the "plain meaning" of the provision).  FACTA states that a person who "accepts credit cards or debit cards" may not print certain information on "any receipt provided to the cardholder at the point of the sale or transaction."  15 U.S.C. § 1681c(g)(1).  This provision limits FACTA's application to situations where (1) a cardholder (2) has used a credit or debit card (3) in a sale or transaction (4) and receives (5) a receipt (6) at the point of that sale or transaction.  More simply, the statute applies when a consumer uses a credit or debit card to buy something and gets a receipt acknowledging the credit or debit card payment.  This plain meaning is confirmed by the fact that the compliance provisions of FACTA address the machines that generate this kind of

receipt.  § 1681c(g)(3)(A) and (B) (addressing "any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions").

FACTA does not define the term "receipt," and the Court should therefore give the term its "ordinary meaning." *Sanders v. Jackson*, 33 F. Supp. 2d 693, (N.D. Ill. 1998).  The ordinary meaning of "receipt" is a "[w]ritten acknowledgment that something has been received." BLACK'S LAW DICTIONARY 1268 (8th ed. 2004).  *See also* RANDOM HOUSE WEBSTER'S COLLEGE DICTIONARY 1027 (2nd ed. 2001) ("written acknowledgment of having received money or goods as specified"); SHORTER OXFORD ENGLISH DICTIONARY 2484 (6th ed. 2007) ("acknowledge[ment] in writing [of] the receipt of (a sum of money)"); WEBSTER'S NEW WORLD DICTIONARY 537 (4th ed. 2003) ("a written acknowledgement that something has been received").  Every one of these definitions contains a timing requirement:  For there to be a receipt, the money must have already been received.  Indeed, it is the very purpose of a "receipt" to document the fact that the sale has occurred and money has changed hands.

In this case, Blahnik received a FACTA "receipt," printed electronically by Life Time's point-of-sale terminal, after he paid his membership fees.  (*Cf.* Answer Ex. 1 (attaching merchant copy of receipt).)  That receipt documented the money that changed hands through the credit-card transaction.  Blahnik does not challenge that receipt, because it indisputably complies with FACTA.  He challenges instead his contract with Life Time—the Membership Agreement attached to his complaint.

Blahnik's Membership Agreement, however, is not a "receipt" under FACTA, because it does not acknowledge a completed transaction in which Blahnik already paid for something.  The Membership Agreement reflects only the terms on which Life Time and Blahnik agreed that they *would* conduct a transaction.  It authorizes future transactions.  It is a contract, not a receipt.

It shows what Blahnik *will* pay, not what he *has* paid. FACTA regulates only receipts that do the latter.

The federal regulations governing electronic fund transfers (Regulation E, 12 C.F.R. part 205) draw *exactly* the same distinction between forward-looking authorizations and backward-looking receipts that FACTA does. When a consumer gives written authorization for a "[p]reauthorized electronic fund transfer[]," the regulations require the business to give the customer "a *copy*" of the authorization. 12 C.F.R. § 205.10(b) (emphasis added). But when a consumer actually "initiates an electronic fund transfer," the regulations require the business to offer a "*receipt*." 12 C.F.R. § 205.9(a) (emphasis added). Neither lay people nor financial regulators refer to an authorization for future payment as a "receipt."

Nor has any court of which we are aware applied FACTA to any document other than a true, backward-looking receipt. *See, e.g., Iosello v. Leiblys, Inc.*, 502 F. Supp. 2d 782 (N.D. Ill. 2007) (receipt); *Follman v. Hospitality Plus of Carpentersville, Inc.*, 532 F. Supp. 2d 960 (N.D. Ill. 2007) (receipt). The one court we found that was presented with forward-looking authorizations (in the form of rental car agreements) noted that the authorizations would fall within FACTA only "if they are considered receipts." *Najarian v. Avis Rent A Car System*, No. CV 07-588-RGK, 2007 WL 4682071, at *3 (C.D. Cal. June 11, 2007) (identifying issue in context of motion for class certification). Two other courts have addressed the meaning of "point of sale or transaction" and have concluded that the phrase means the point in time at which the sale or transaction has occurred. *Grabein v. 1-800-Flowers.com, Inc.*, No. 07-22235-CIV, 2008 WL 343179, at *4-*5 (S.D. Fla. Jan. 29, 2008) (addressing online flower purchase); *Ehrheart v. Bose Corporation*, No. Civ. A. 07-350, 2008 WL 64491, at *4-*6 (W.D. Pa. Jan. 4, 2008) (addressing telephone purchase of headphones). That is the point in time when "receipts"

are given.  Under these cases, just as under every other source of authority, Blahnik's

Membership Agreement with Life Time is not a receipt, because it does not acknowledge that

money had already changed hands in a completed sale or transaction.

The Court should reject any attempt by Blahnik to use the purpose of FACTA to expand

the statute beyond its enacted text.  FACTA's purpose is to "restrict the amount of information

available to identity thieves . . . ."  149 Cong. Rec. S 13848, S13850 (Nov. 4, 2003) (statement of

Sen. Shelby).  Congress, however, went only so far in implementing that purpose.  It limited

FACTA's application to "receipts"—and not even to all receipts.  Receipts made "by

handwriting or by an imprint or copy of the card" are expressly excluded from FACTA.  15

U.S.C. § 1681c(g)(2).  Receipts that a merchant keeps for itself, like the merchant copy that Life

Time kept from Blahnik's transaction (Answer Ex. 1), are also excluded because FACTA applies

only to receipts "provided to the cardholder."  § 1681c(g)(1).  "[N]o legislation pursues its

purposes at all costs.  Deciding what competing values will or will not be sacrificed to the

achievement of a particular objective is the very essence of legislative choice."  *Rodriguez v.*

*United States*, 480 U.S. 522, 525-26 (1987).  Congress made pragmatic judgments in FACTA

about how far to go in implementing the purpose of restricting information available to identity

thieves.  It limited FACTA to one portion of the "receipts" "provided to" cardholders "at the

point of sale or transaction."  This Court should neither expand nor contract the scope that

Congress chose.

Blahnik's Membership Agreement with Life Time is not a "receipt" regulated by

FACTA.  The Court should therefore grant Life Time's motion for judgment on the pleadings

and enter final judgment dismissing this action.

**II.    In The Alternative, Blahnik Does Not Meet The Requirements For A Private Cause Of Action.**

Simply proving a FACTA violation is not enough to support a private right of action.  To bring a private action, a consumer must also satisfy the requirements of one of two statutory provisions:  15 U.S.C. § 1691n, which requires a consumer to prove a "willful" violation of the Act; or 15 U.S.C. § 1681o, which requires a consumer to prove a "negligent" violation of the Act plus actual damages.  Even if the Court disagrees with Life Time and decides that it cannot rule as matter of law that Blahnik's Membership Agreement is not a "receipt," the Court still should grant judgment for Life Time because Blahnik cannot satisfy the requirements of either § 1691n or § 1691o.

**A.    Blahnik does not state a claim under 15 U.S.C. § 1691n (Count I) because Life Time did not "willfully" fail to comply with FACTA.**

Consumers may state a claim for statutory and punitive damages under § 1691n only if the defendant "willfully fails to comply" with the provision of the Fair Credit Reporting Act at issue.  15 U.S.C. § 1691n.  A "willful" violation, according to the Supreme Court, is one based on conduct that has an "unjustifiably high risk" of violating the statute, either because the conduct is "known" to violate the statute or because it is "so obvious that it should be known" to violate the statute.  *Safeco Ins. Co. of America v. Burr*, ___ U.S. ___, 127 S. Ct. 2201, 2215 (2007).  The Seventh Circuit recently elaborated that an erroneous interpretation that leads to a violation is "willful" only if the interpretation creates a risk of violation "substantially above the risk usually associated with careless readings."  *Murray v. New Cingular Wireless Services, Inc.*, Nos. 06-2477, 06-4368, 07-2370, 2008 WL 1701839, at *7 (7th Cir. Apr. 16, 2008).

The Court cannot conclude in this case that Life Time willfully violated FACTA's regulation of "receipts," because forward-looking authorizations like Blahnik's Membership Agreement were not "known" to be "receipts" for a "sale or transaction" under FACTA.  No

court had held that they were receipts when Blahnik signed his Membership Agreement; no court

has held that even now.  Nor was it "so obvious" that forward-looking authorizations are FACTA

"receipts" that Life Time "should [have] known" that they were.  If anything, it is obvious that

forward-looking authorizations are *not* receipts.  As demonstrated above, the plain meaning of

the statute, its interpretation by courts, the ordinary meaning of "receipt" in common usage, and

the distinction between receipts and authorizations in the electronic-funds transfer regulations all

*exclude* forward-looking authorizations like the Membership Agreement.  Life Time

undisputedly complied with FACTA on the document Blahnik received that everyone

acknowledges is a receipt.  As a matter of law, Life Time cannot be held to have "willfully"

violated FACTA for failing to anticipate that some other documents—its Membership

Agreements—may be considered receipts as well, even if no one called them that and they did

not function as receipts.  Count I of Blahnik's complaint, relying on § 1681n, therefore fails as a

matter of law.

> **B.      Blahnik does not state a claim under 15 U.S.C. § 1691o (Count II) because he does not allege that he suffered any actual damages.**

Count II of Blahnik's complaint also fails as a matter of law because Blahnik does not

allege that he suffered any actual damages as a result of Life Time's actions—and actual

damages are a prerequisite to suit under 15 U.S.C. § 1691o.

The Seventh Circuit directly addressed this issue in *Crabill v. Trans Union, L.L.C.*, 259

F.3d 662 (7th Cir. 2001).  The plaintiff in *Crabill* argued that a statutory violation alone, plus a

right to recover attorneys' fees, is sufficient to support an action under § 1691o—even without

actual damages.  But the Seventh Circuit rejected that argument.  The Seventh Circuit held that

"a plaintiff must obtain formal judicial relief"—meaning damages or an injunction—to sustain a

cause of action.  *Crabill*, 259 F.3d at 667.  Because the plaintiff in *Crabill* did not suffer actual

damages, the court held that he was "entitled to no relief at all, not even attorneys' fees" and affirmed judgment against him. *Ibid.* Following *Crabill*, both the Seventh Circuit and this Court have entered judgment against § 1691o claims brought by plaintiffs who suffered no actual damages. *See, e.g.*, *Ruffin-Thompkins v. Experian Info. Solutions, Inc.*, 422 F.3d 603, 608-10 (7th Cir. 2005); *McClelland v. Experian Info. Solutions, Inc.*, No. 04 C 5686, 2006 WL 2191973, at \*4-\*5 (N.D. Ill. July 28, 2006); *Molina v. Experian Credit Info. Solutions*, No. 02 C 5561, 2005 WL 5525336, at \*5-\*6, \*9 (N.D. Ill. Jan. 19, 2005).

Blahnik's claim for relief under § 1691o fails under the *Crabill* line of cases. The only parts of Blahnik's Complaint that address damages are the introduction and the prayer for relief, which state only that Blahnik is requesting damages, not that he has suffered any. (Complaint ¶¶ 1 and Prayer For Relief.) The Complaint never alleges facts showing that Blahnik was actually damaged; it does not allege even the conclusion that he was damaged. Under the Supreme Court's decision in *Twombly*, this failure is fatal to Blahnik's claim. *Twombly* holds that a complaint must contain "[f]actual allegations" that are "enough to raise a right to relief above the speculative level." 127 S. Ct.. at 1965 (citations omitted). The allegations themselves must "plausibly sugges[t]" and "not merely [be] consistent with" a cause of action. *Id.* at 1966. No allegations in the Complaint plausibly suggest that Blahnik suffered identity theft or any other damages as a result of Life Time printing the expiration date of his credit card on his Membership Agreement. The Court must therefore grant judgment for Life Time on Count II of the Complaint.

## CONCLUSION

FACTA applies to "receipts," which are documents acknowledging that money changed hands in a completed debit- or credit-card sale or transaction. FACTA does not apply to

-13-

authorizations for future sales or transactions, and it therefore did not apply to the Membership

Agreement signed by Blahnik.  Blahnik received a receipt that complied with FACTA, and he

does not challenge it.  The Court should reject his attempt to stretch FACTA to apply to

something else.  The Court should grant judgment for Life Time and promptly dismiss this

action.


Date:   May 1, 2008                                        Respectfully submitted,

                                                           LIFE TIME FITNESS, INC.


                                                           By: /s/ Henry M. Baskerville
                                                                  One of Its Attorneys

Aaron D. Van Oort (MN Bar No. 0315539)
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
612-766-8138
AVanOort@faegre.com

Jonathan M. Cyrluk (Ill. Bar No. #6210250)
Henry M. Baskerville (Ill. Bar No. #6285712)
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, IL 60603
(312) 338-0200
jcyrluk@stetleranduffy.com
hbasker@stetleranduffy.com


fb.us.2793838.05

-15-

## <u>CERTIFICATE OF SERVICE</u>

I, Henry Baskerville, an attorney, certify that I caused copies of **Defendant Life Time**

**Fitness, Inc.'s Memorandum in Support of Its Motion for Judgment on the Pleadings** to be

served via the Court's CM/ECF system on the attorney listed below this 1st day of May, 2008.


/s/     Henry M. Baskerville


To:    Alex Hageli
       Law Office of Alex M. Hageli
       435 South Cleveland Ave., Suite 306
       Arlington Heights, IL 60005
       847-392-4832
       alex@hageli.com
       *Attorney for Plaintiff*