IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JASON S. BLAHNIK, ) | |
| ) | |
| on behalf of himself and all others ) | |
| similarly situated, ) | Case No. 08 C 497 |
| ) | |
| Plaintiff, ) | Judge Gottschall |
| ) | |
| vs. ) | Magistrate Judge Denlow |
| ) | |
| ) | |
| LIFE TIME FITNESS, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**PLAINTIFF'S REPONSE IN OPPOSITION TO DEFENDANT LIFE TIME FITNESS, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS**

The basis for liability in this matter is the Defendant's violation of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., as amended by the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"). Specifically, the Defendant provided the Plaintiff with a receipt that displayed his credit card's expiration date in violation of section 1681c(g)(1).

**STANDARD OF REVIEW**

A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standards applicable to motions filed under Rule 12(b)(6) for failure to state a claim. *R.J. Corman Derailment Services, LLC v. International Union of Operating Engineers, Local Union 150, AFL-CIO*, 335 F.3d 643 (7th Cir. 2003). So long as the facts alleged in a complaint are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," the complaint will survive a Rule 12(b)(6)

motion to dismiss. *Bell Atl. Corp. v. Twombly*, --- U.S. ---, ---, 127 S. Ct. 1955, 1974 (2007); *see also Harris v. Wal-Mart Stores, Inc.*, 2007 WL 3046162, at *2 (N.D. Ill. October 10, 2007) (complaint alleging that defendant "engaged in the precise conduct proscribed by the FACTA…and claim[ing] that [defendant] printed receipts containing consumer credit information in an improper manner, after the date on which the FACTA became effective" raised a right to relief beyond speculative level). In evaluating the motion, the court will "accept all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in favor of the plaintiff." *Thomas v. Guardsmark*, 381 F.3d 701, 704 (7th Cir. 2004) (internal citations and quotation marks omitted).

## ARGUMENT

The FCRA, as amended by FACTA, provides in relevant part as follows:

(g) Truncation of Credit Card and Debit Card Numbers

  (1) *In general*. Except as otherwise provided in this subsection, no person that accepts credit cards or debits cards for the transaction of business shall print more than the last 5 digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

  (2) *Limitation*. This subsection shall apply only to receipts that are electronically printed, and shall not apply to transactions in which the sole means of recording a credit card or debit card account number is by handwriting or by an imprint or copy of the card.

  (3) *Effective date*. This subsection shall become effective—

   (A) 3 years after the date of enactment of this subsection, with respect to any cash register or other machine or device that electronically prints receipts for credit card or debit card transactions that is in use before January 1, 2005; and

>      (B)   1 year after the date of enactment of this subsection, with respect to any cash register or device that electronically prints receipts for credit card or debit car transactions that is first put into use on or after January 1, 2005.

15 U.S.C. § 1681c(g).

It is an axiom of statutory interpretation that "when a statute is clear and unambiguous, [a] court must give effect to the plain meaning of the statute." *Nolan v. City of Chicago*, 125 F. Supp.2d 324, 335 (N.D. Ill. 2000). The Defendant is a "person" that accept credit cards for the transaction of business.[1] The Defendant does not dispute this. Under the plain terms of the FCRA, then, the Defendant is prohibited from printing the expiration date of a credit card upon *any receipt* provided to a cardholder *either* at the point of sale *or* at the point of transaction.

On November 29, 2007, the Plaintiff entered into an agreement with the Defendant "to obtain a Life Time Fitness membership" and signed a document entitled, "General Terms Agreement." (Complt.., Ex. A.) The entering into of a contract between a for-profit corporation and a consumer regarding the provision of services is unquestionably a "transaction of business."[2] In transacting that business (i.e., executing the agreement), the Defendant accepted a credit card from the Plaintiff. The Defendant, after accepting a credit card from the Plaintiff, provided a copy of the General Terms Agreement to the Plaintiff that displayed his credit card expiration date. That copy constitutes a receipt of the executed Life Time Fitness membership agreement under the FCRA. As such, Defendant violated section 1681c(g)(1) of the FCRA.

---

[1] Defendant is a for-profit corporation that owns and operates physical fitness facilities and sells access to those facilities through the sale of memberships.

[2] The FCRA does not define "transaction of business" and, as such, the Court should give the term its ordinary meaning. *See Hilliard v. Lummus Co., Inc,* 834 F.2d 1352, 1355 (7th Cir. 1987). Defendant does not dispute that the execution of a contract is a "transaction of business."

3

The Defendant's argument basically rests on the proposition that a receipt only exists where money has changed hands. Such a reading finds no basis in the ordinary meaning of the word "receipt" (including those definitions cited to by the Defendant), and in fact is inconsistent with the language of section 1681c(g). While the Defendant at first acknowledges that the truncation requirements apply to receipts provided at the point of sale *or* transaction, the Defendant promptly adopts a reading that conflates the two. The Defendant states, "A FACTA 'receipt' is a printed form … acknowledging the money that has been received" and, further, "[FACTA] applies when a consumer uses a credit or debit card *to buy something* and gets a receipt acknowledging the credit or debit card payment." (Def.'s M. for Judgment, p. 7 (emphasis added).) Later, the Defendant avers that the General Terms Agreement is not a receipt "because it does not acknowledge that money had already changed hands in a completed sale or transaction." (Def.'s M. for Judgment, p. 10.) And finally, in the Conclusion, the Defendant yet again imbues the word "receipt" with a requirement that "money changed hands." (Def.'s M. for Judgment, pg. 13.)

It is a well-established rule of statutory interpretation that courts should "try to avoid interpretations of statutes that render words, or other sections, superfluous." *Gillespie v. Trans Union Corp.*, 482 F.3d 907, 909 (7th Cir. 2007). Yet the Defendant's interpretation of the word "receipt" to require an exchange of money (i.e., a sale[3]) renders superfluous the use of the words "or transaction."[4] In this instance, Plaintiff received a membership with the Defendant that allowed him to use its fitness facilities in exchange

---

[3] "Sale" is defined as the exchange of goods or services for an amount of money. Webster's II New College Dictionary (2001).
[4] "Transaction" is defined as "the act of transacting," with "transact" defined as "[t]o do business." Webster's II New College Dictionary (2001).

4

for a promise to pay membership fees on a continuing monthly basis. If Congress intended for the truncation requirements to apply only in instances where there was an exchange of money for goods or services, "at the point of sale" would have sufficed. The words "or transaction" are obviously intended to extend the requirements to situations where no cash is exchanged but a business transaction, such as the execution of a contract, nevertheless occurs. Indeed, three of the definitions of "receipt" cited to by the Defendant do not even specifically require the provision of cash. For example, the Defendant cites to Black's Law Dictionary, yet that definition ("[w]ritten acknowledgement that something has been received") does not specifically refer to an exchange of money. Same with the Defendant's citation to Webster's New World Dictionary's (4th ed. 2003) ("a written acknowledgement that something has been received.")

Such a reading is buttressed by the language of section 1681c(g)(3). This provision relates to the effective date of the truncation requirements and makes reference, in both subsection (A) and (B), to a "cash register or other machine or device that electronically prints receipts for credit card or debit card transactions." In both subsections, rather than refer to sales, the statute refers instead to transactions. The use of this word is inconsistent with an intent to limit application of the truncation requirements to just straight "sales" (i.e., instances where an amount of money is exchanged for goods or services) as the Defendant would have this Court do. If that had been the intent, use of the word "sales" would have been more appropriate than the more expansive "transactions." In the words of the Defendant, "This Court should neither expand *nor*

5

*contract* the scope that Congress chose." (Def.'s M. for Judgment, p. 10 (emphasis added).)

Further, the truncation requirements of section 1681c(g)(1) apply to "*any* receipt." As the U.S. Supreme Court noted when interpreting another federal law, use of the modifier "any" amounts to "expansive language [that] offers no indication whatever that Congress intended [a] limiting construction." *Harrison v. PPG Indus.*, 446 U.S. 578, 589 (1980). To argue that an exchange of money is a condition precedent for the existence of a receipt is certainly a limiting construction, especially when the Court considers that the Defendant's own definitions do not require it. Point of fact, use of the word "any" demonstrates a clear intent on the part of Congress to expansively apply section 1681c(g) to electronically-printed records of sales or transactions that might not perhaps be readily referred to in common parlance as receipts. Such an interpretation is entirely consistent with the legislative intent behind the FACTA amendments, which is to help "prevent the possibility of thieves stealing the identify of another by obtaining one's credit card number and the expiration date of that credit card to transact business." *See Iosello v. Leiblys, Inc.*, 502 F. Supp.2d 782, 786 (N.D. Ill. 2007).

Finally, the Defendant raises two procedural challenges to the Complaint that are disposed of in relatively quick order. First, the Defendant asserts that, even if the Plaintiff is correct in his assertions that the FCRA's truncation requirements do indeed apply to the General Terms Agreement, the Defendant's provision of a receipt displaying his credit card expiration date did not stem from any willful behavior per the U.S. Supreme Court's *Safeco v. Edo*, 127 S.Ct. 2001 (2007) decision. Of course, the

6

Defendant's argument is premature at this point in the proceedings. The court in *Claffey, et al. v. River Oaks Hyundai, Inc., et al.* explains:

> …the "objective" standard for recklessness that [*Safeco*] adopted does not render irrelevant evidence of the party's actual understanding of the law. Indeed, the Court said that it was adopting the common law definition of recklessness, which it described as "action entailing 'an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Evidence of a party's actions and intentions is unquestionably relevant in determining whether that standard is met in a particular case.*

494 F. Supp.2d 976, 978-979 (N.D. Ill. 2007) (internal citations omitted) (emphasis added). It is entirely possible that the Defendant knowingly, and therefore willfully, violated the FCRA by providing the Plaintiff with a receipt that displayed his credit card's expiration date. Whether the Defendant did indeed willfully violate the FCRA is a question of fact that cannot be answered on a motion for judgment on the pleadings.

Secondly, the Defendant alleges the Plaintiff failed to allege actual damages. The Court need only refer to ¶ 10 of the Complaint to see that this is plainly not the case.

## CONCLUSION

WHEREFORE, Plaintiff Jason Blahnik respectfully requests this Honorable Court deny Defendant Life Time Fitness, Inc.'s motion for judgment on the pleadings.

DATED:  May 28, 2008                              Respectfully submitted,


                                                  s/ Alex Hageli
                                                  Alex Hageli
                                                  LAW OFFICE OF ALEX M. HAGELI
                                                  435 South Cleveland Avenue, Suite 306
                                                  Arlington Heights, IL  60005
                                                  (847) 392-4832
                                                  alex@hageli.com

                                                  **ATTORNEY FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

I hereby certify, on this 28th day of May, 2008, I caused the foregoing **Plaintiff's Response in Opposition to Defendant Life Time Fitness, Inc.'s Motion for Judgment on the Pleadings**, to be filed electronically, and served same, by electronic service, upon the following counsel of record:

Aaron D. Van Oort
Faegre & Benson LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402-3901
(612) 766-8138

Jonathan M. Cyrluk
Henry M. Baskerville
STETLER & DUFFY, LTD.
11 South LaSalle Street, Suite 1200
Chicago, IL  60603
(312) 338-0200

                                              s/ Alex Hageli